UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| LYNN MAHONEY | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | Cause No. 3:19-CV-1130-RLM |
| | ) | |
| BEACON HEALTH | ) | |
| VENTURES, *et al.,* | ) | |
| | ) | |
| *Defendants* | ) | |

OPINION AND ORDER

This case is about a Facebook post. Lynn Mahoney worked as a nurse manager for Beacon Health Ventures and was assigned to provide nursing services at the St. Joseph County Jail and Juvenile Justice Center, which are run by the St. Joseph County Police Department. After Ms. Mahoney published a controversial Facebook post, the St. Joseph County Police Department had her removed from the jail and Beacon Health Ventures fired her. Ms. Mahoney sued Beacon Health Ventures and the St. Joseph County Police Department for First Amendment retaliation and conspiracy to deprive her of constitutional rights. She also sued the St. Joseph County Police Department for tortious interference with a business relationship. Beacon Health Ventures moved for summary judgment on both counts, [Doc. No. 48], and the St. Joseph County Police Department moved for summary judgment on all three counts, [Doc. No. 53]. The court heard oral argument on the motions on February 8, and now grants Beacon Health Ventures' motion for summary judgment and grants in part and

denies in part the St. Joseph County Police Department's motion for summary judgment

## I. STANDARD OF REVIEW

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine issue of material fact exists whenever "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). In deciding whether a genuine issue of material fact exists, we accept the non-movant's evidence as true and draw all inferences in his favor. Id. at 255. Nevertheless, the nonmoving party it not entitled to "[i]nferences that are supported by only speculation or conjecture." Argyropoulos v. City of Alton, 539 F.3d 724, 732 (7th Cir. 2008). The existence of an alleged factual dispute, by itself, won't defeat a summary judgment motion; "instead, the nonmovant must present definite, competent evidence in rebuttal," Parent v. Home Depot U.S.A., Inc., 694 F.3d 919, 922 (7th Cir. 2012), and "must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." Hemsworth v. Quotesmith.com, Inc., 476 F.3d 487, 490 (7th Cir. 2007); see also Fed. R. Civ. P. 56(e)(2).

## II. Factual Background

It is June 14, 2019. Lynn Mahoney sees a news report about a white police officer following and confronting a pregnant black woman and her daughter in Phoenix, Arizona. The news report shocks Ms. Mahoney, who then posts a link to the report on her personal Facebook account and says this about it:

"And nobody can figure out why these people hate cops? What in the actual fuck is wrong with these testosterone filled assholes? A fucking TODDLER picked up a 99cent doll and walked out of the store with it and the cop follows them home and charges at the pregnant mother with his gun drawn??? Fuck that piece of shit...I hope to fuck he gets fired.. Wait, she was black, he was white.. Ain't shit gonna happen to him, who am I kidding? This country is fucked..."

This post becomes a problem because Ms. Mahoney has been a manager of jail health services for the St. Joseph County Jail since 2015. Ms. Mahoney manages the budget, oversees nursing staff and schedules, and works with the warden to administer health care to inmates safely.

Ms. Mahoney isn't a county employee. She actually works for Beacon Health Ventures, which has a contract with the St. Joseph County Police Department dating back to 1994 by which it provides health care services at the St. Joseph County Jail and Juvenile Justice Center. Beacon provides staff, the jail provides medical equipment, and Beacon and the jail split the expenses for equipment. Beacon staff assigned to the jail must follow both Beacon's policies and the jail's policy manual.

Still on June 14, a jail employee shows a printout of Ms. Mahoney's post to Warden Julieanne Lawson. Warden Lawson played a role in Ms. Mahoney getting her position at the jail: as part of Beacon's hiring process in 2018, Ms. Mahoney met with Warden Lawson, and William Redman, who later was elected sheriff of St. Joseph County in 2018. They gave positive feedback about Ms. Mahoney, and Beacon wouldn't have hired Ms. Mahoney without their approval.

Warden Lawson doesn't watch the video, but is quite unhappy with the post. She brings the post to the attention of Sheriff Redman and other managers at the jail and County Police Department. Sheriff Redman and Warden Lawson consider the post inappropriate and offensive to all law enforcement officers. On June 19, Warden Lawson tells Beacon to remove Ms. Mahoney from the jail and that Ms. Mahoney is no longer welcome there. Elizabeth Walker, Beacon's Director of Professional Services and Business Development, goes to the jail and removes Ms. Mahoney without looking at the post.

Ms. Mahoney has already made plans to move from the jail to another position with Beacon. She interviews for a new position the day before her removal from the jail, and expects to do a job shadow for the new job on June 21. On June 20, the person she interviewed with calls Ms. Mahoney with news that he can no longer pursue her application for the new job. On June 25, Beacon sends Ms. Mahoney a letter terminating her employment with Beacon as of June 19, the day she was removed from the jail.

Ms. Mahoney sues both Beacon and the County Police Department for First Amendment retaliation under § 1983 (Count I) and conspiracy to deprive

constitutional rights under § 1983 (Count II). She also sues the County Police Department for tortious interference with a business relationship (Count III). Both defendants seek summary judgment on all claims.

III. DISCUSSION

A.  Beacon's motion for summary judgment.

*1.  First Amendment retaliation (Count I)*

Beacon moves for summary judgment on Ms. Mahoney's First Amendment retaliation claim, arguing that it performed no state action, so it isn't bound by the First Amendment and can't be liable under 42 U.S.C. § 1983.[1] Ms. Mahoney concedes that Beacon isn't a state actor per se but responds that Beacon can still be liable under the First Amendment and § 1983 because it was a *de facto* state actor.

The First Amendment limits government interference with speech, but not private interference, so First Amendment retaliation claims generally only apply against public employers, not private employers. See Yatvin v. Madison Metro. Sch. Dist., 840 F.2d 412, 420 (7th Cir. 1988). An exception to this rule is when challenged private action has a "sufficiently close nexus" to the state so that the challenged action can be fairly considered an action of the state itself. Jackson

---

[1] The state action requirement of the First and Fourteenth Amendments and the "under color of state law" requirement of § 1983 can be treated as the same question. See Rendell-Baker v. Kohn, 457 U.S. 830, 838 (1982); see also Rodriguez v. Plymouth Ambulance Serv., 577 F.3d 816, 822 n.6 (7th Cir. 2009).

v. Metro. Edison Co., 419 U.S. 345, 351 (1974). Although courts have created several tests for evaluating whether a private action is *de facto* state action, the tests are "susceptible to semantic variations, conflations and significant overlap in practical application," and they "lack rigid simplicity." Rodriguez v. Plymouth Ambulance Serv., 577 F.3d 816, 823 (7th Cir. 2009) (citing Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n, 531 U.S. 288, 294 (2001)). One test, the traditional, exclusive public function test, finds *de facto* state action when a private actor performs a function traditionally reserved to the state and only to the state. Manhattan Cmty. Access Corp. v. Halleck, 139 S. Ct. 1921, 1928 (2019); Jackson v. Metro. Edison Co., 419 U.S. at 354. Another, the symbiotic relationship test,[2] finds *de facto* state action when the state has "so far insinuated itself into a position of interdependence" with a private actor such that they're considered the same. Burton v. Wilmington Parking Auth., 365 U.S. 715, 725 (1961). A third, the state command test, finds *de facto* state action when the state compels the private party to take the challenged action. Manhattan Cmty. Access Corp. v. Halleck, 139 S. Ct. at 1928. Ms. Mahoney argues that Beacon is a *de facto* state actor under any of the three tests.

---

[2] The Supreme Court described some of the tests in a fairly recent case, referring to cases where "the government acts jointly with the private entity" but didn't refer to the symbiotic relationship test. Manhattan Cmty. Access Corp. v. Halleck, 139 S. Ct. 1921, 1928 (2019). The Supreme Court's list wasn't exhaustive, and courts have interpreted the symbiotic relationship tests and joint action/participation tests as separate tests. E.g., Rodriguez v. Plymouth Ambulance Serv., 577 F.3d 816, 823–824 (7th Cir. 2009). The court recognizes that there's some overlap between these tests, but because Ms. Mahoney didn't refer to the joint action/participation test or cite cases associated with the joint action/participation test, the court understands Ms. Mahoney's arguments as extending only to the three tests discussed in this opinion.

A non-state actor can be considered a state actor under the traditional exclusive public function test if the actor performs a function traditionally reserved exclusively to the state. Jackson v. Metro. Edison Co., 419 U.S. at 352. For instance, courts have found state action when private parties ran primary elections, Terry v. Adams, 345 U.S. 461 (1953); Nixon v. Condon, 286 U.S. 73 (1932), owned and operated towns, Marsh v. Alabama, 326 U.S. 501 (1946), established a city park, Evans v. Newton, 382 U.S. 296 (1966), and provided health care to prisoners, West v. Atkins, 487 U.S. 42 (1988). It's not enough that the action is something that the state does—the function must be something traditionally done by, and only by, the state. Flagg Bros., Inc. v. Brooks, 436 U.S. 149, 159–161 (1978). A court applying this test must focus on the specific conduct of which the plaintiff complains. Blum v. Yaretsky, 457 U.S. 991, 1004 (1982).

Ms. Mahoney argues that Beacon was a *de facto* state actor because it provided health care to inmates, which is a function traditionally reserved exclusively to the state. She relies on West v. Atkins, 487 U.S. 42 (1988), a case in which private physicians contracted to provide health care to prisoners. The West Court reasoned that because providing health care to prisoners is something the state—and only the state—could traditionally do, and because the state was obligated to provide constitutionally adequate health care, a private doctor who voluntarily assumed that responsibility could be considered a state actor while providing health care to prisoners. Id. at 55–57.

Beacon argues that its act of firing Ms. Mahoney or employing her in general isn't a function traditionally reserved to the state, so it wasn't a *de facto* state actor under this theory. Beacon analogizes to Eastes v. ACS Human Services, LLC, 822 F. Supp. 2d 843 (N.D. Ind. 2011), in which a private company providing call center services for state programs wasn't a state actor when it fired an employee based on the employee's speech. The court reasoned that even if the defendant were a state actor for purposes of handling state benefits inquiries, it wasn't a state actor for purposes of hiring and firing employees, since that wasn't a traditionally exclusive public function. Id. at 847–848.

Ms. Mahoney doesn't explain why Beacon is a state actor for employment purposes under this test. While Beacon appears to be a state actor in providing health care to inmates under West v. Atkins, that would be helpful for an inmate claiming constitutionally deficient health care. The specific conduct complained of must be a traditionally exclusive function of the state, and Ms. Mahoney doesn't claim that employing and firing nursing staff is traditionally reserved to the state. Ms. Mahoney's assertion that Beacon's status as a state actor when providing health care to inmates extends to its employment relationship to her runs contrary to the test's inquiry into the challenged action, so Beacon isn't a *de facto* state actor under the traditional, exclusive public function test.

Ms. Mahoney's second argument is that Beacon is a *de facto* state action under the symbiotic relationship test. The symbiotic relationship test was established in Burton v. Wilmington Parking, 365 U.S. 715 (1961), a case where a privately owned restaurant was considered a state actor for purposes of a claim

of racial discrimination.[3] The court reasoned that because the restaurant leased part of a building from the state, the state maintained the building, the state provided parking for restaurant guests, and the state depended on the restaurant's financial success, the restaurant could be considered a state actor for purposes of racial discrimination. Id. The court purported to limit its holding to instances in which a state leased public property "in the manner and for the purpose shown to have been the case here." Id. at 726.

Ms. Mahoney argues Beacon meets the symbiotic relationship test because Beacon and the County Police Department's actions were intertwined in the following ways: (1) the nature of her employment at a secured jail indicated a high level of control by the County Police Department; (2) Beacon employees had to follow the jail's safety and privacy policies; (3) the jail provided the medical facility; (4) the jail provide medical equipment the nurses used; (5) Beacon's contract required that the County Police Department pay for some medical equipment; and (6) a Beacon manager who wasn't a nurse took over Ms. Mahoney's nurse manager duties when Beacon removed Ms. Mahoney from the jail.

Beacon responds that even if Beacon had an intertwined relationship with the County Police Department in some respects, Ms. Mahoney can't show any symbiotic relationship with respect to Beacon's decision to fire her. Beacon

---

[3] Burton v. Wilmington Parking Authority doesn't itself refer to the "symbiotic relationship test," but the Court later referred to Burton as having established the symbiotic relationship test. Rodriguez v. Plymouth Ambulance Serv., 577 F.3d 816, 823 n.8 (citing Moose Lodge No. 107 v. Irvis, 407 U.S. 163, 175 (1972)).

analogizes to <u>Boyko v. Parkview Hospital, Inc.</u>, No. 1:10-CV-260, 2012 U.S. Dist. LEXIS 114384 at *9 (N.D. Ind., Jan. 25, 2012), a case in which a hospital that sent drug tests to a state agency wasn't a state actor under the symbiotic relationship theory.

The symbiotic relationship theory, as explained in <u>Burton</u>, creates a narrow rule limited to the circumstances of the case. Ms. Mahoney doesn't explain how her facts match the fact-specific holding of <u>Burton</u> or explain how <u>Burton</u> was extended to different scenarios or relationships like the one between Beacon and the County Police Department. Some of the facts Ms. Mahoney cites show interdependence between Beacon and the County Police Department, but she doesn't explain how this interdependence relates to Beacon's firing decision, which is important given that courts are to consider the specific conduct of which the plaintiff complains. <u>Am. Mfrs. Mut. Ins. Co. v. Sullivan</u>, 526 U.S. 40, 51 (1999). Ms. Mahoney hasn't shown how Beacon's and the County Police Department's relationship amounted to a "symbiotic relationship" as contemplated by <u>Burton</u>.

The state command theory, the third theory on which Ms. Mahoney relies, provides that the private party's action may be attributable to the state if the government compels a private party to take certain action. <u>Manhattan Cmty. Access Corp. v. Halleck</u>, 139 S. Ct. 1921, 1928 (2019); <u>Rodriguez v. Plymouth Ambulance Serv.</u>, 577 F.3d 816, 823–824 (7th Cir. 2009).

Ms. Mahoney contends that Beacon meets the state command test because the County Police Department "exerted control over Mahoney's

employment with Beacon." She presents evidence that Beacon only hired nurses to be assigned to the jail if Sheriff Redman and Warden Lawson thought well of the candidate and evidence that Ms. Mahoney's Facebook post was the impetus both for the County Jail to remove Ms. Mahoney and for Beacon to fire Ms. Mahoney.

Beacon disputes that the County Police Department compelled Beacon to fire Ms. Mahoney. Beacon cites undisputed evidence that it could have transferred Ms. Mahoney to a different department at Beacon instead of firing her, as it had done with other nurses in the past, and argues that none of Ms. Mahoney's evidence shows that the County Police Department suggested or requested that Beacon fire Ms. Mahoney.

Ms. Mahoney has created a genuine issue of whether Beacon fired her because the County Police Department removed her from the jail, but she hasn't created a genuine issue of whether the County Police Department compelled Beacon to fire her. That Beacon's decision was based on the County Police Department's actions is perfectly consistent with Beacon acting independently. Viewing the evidence most favorably to Ms. Mahoney doesn't allow an inference of compulsion. Beacon isn't a *de facto* state actor under the state command theory.

Beacon is a non-state actor, and Ms. Mahoney hasn't created a genuine issue as to whether Beacon was a *de facto* state actor. Beacon is entitled to summary judgment on Count I.

### 2. *Conspiracy to deprive constitutional rights under § 1983 (Count II)*

Beacon moves for summary judgment on Ms. Mahoney's § 1983 conspiracy claim, arguing that it's not a state actor and never reached an agreement with the County Police Department to deprive Ms. Mahoney of any of her rights. Ms. Mahoney responds by arguing that Beacon was a *de facto* state actor when it fired her and that evidence supports finding an agreement between Beacon and the County Police Department to punish her for her protected speech.

To prove a § 1983 conspiracy, a plaintiff must show that multiple people reached an agreement to deprive the plaintiff of a constitutional right, an overt act in furtherance of the conspiracy, and that the acts actually deprived the plaintiff of the constitutional right. Beaman v. Freesmeyer, 776 F.3d 500, 510 (7th Cir. 2015). Circumstantial evidence can prove an agreement since conspiracies often don't depend on explicit agreements, but evidence must be more than merely speculative. Id. at 511. While state action is required to prove a rights violation, a private actor may nevertheless be liable for a § 1983 conspiracy if another member of the conspiracy is a state actor. Mark v. Furay, 769 F.2d 1266, 1272–1273 (7th Cir. 1985).

Beacon's first argues it's entitled to summary judgment because it wasn't a state actor. Ms. Mahoney responds that it was a *de facto* state actor when it fired her. For reasons discussed earlier in this opinion, Ms. Mahoney hasn't created a genuine as to Beacon's status as a *de facto* state actor. That doesn't finish the inquiry, though, because Ms. Mahoney suggests that Beacon's

conspiracy with the County Police Department included the County Police Department's decision to remove her from the jail. The conspiracy that Ms. Mahoney alleges includes action by the County Police Department, which is a state actor, so Beacon's status as a private actor doesn't entitle Beacon to summary judgment on the conspiracy claim. See Mark v. Furay, 769 F.2d at 1273.

Beacon then argues that there's no evidence of an agreement between Beacon and the County Police Department to deprive Ms. Mahoney of her rights. Ms. Mahoney claims that Beacon and the County Police Department had a single plan to punish Ms. Mahoney for her protected speech, supported by evidence that Sheriff Redman and Warden Lawson wanted her removed because of her Facebook post, evidence that Ms. Walker fired Ms. Mahoney without watching the video in the Facebook post, and evidence that Ms. Walker mistakenly believed that Ms. Mahoney disparaged local police with her Facebook post.

Ms. Mahoney hasn't created a genuine issue of whether Beacon and the County Police Department reached an agreement to punish Ms. Mahoney. Ms. Mahoney's evidence shows that the County Police Department reacted to the post by removing her from the jail, and that Beacon in turn reacted by firing Ms. Mahoney, but nothing suggests an agreement between the defendants to punish Ms. Mahoney. To infer anything beyond similar conduct based on similar reactions would be too speculative to support finding a conspiracy. Accordingly, Beacon is entitled to summary judgment on Count II.

B. The County Police Department's motion for summary judgment.

   *1. Whether the County Police Department is a proper defendant.*

The St. Joseph County Police Department moves for summary judgment on all counts, arguing that it's an improper defendant under § 1983.[4] Ms. Mahoney disputes the County Police Department's reading of § 1983 and insists that the County Police Department is a proper defendant.

Local government units can be liable under § 1983 for unconstitutional policies and customs. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978). A local government unit is the proper defendant under § 1983 if according to state law, the local government unit is responsible for setting the policy or custom that's alleged to violate a constitutional right. McMillian v. Monroe Cnty., 520 U.S. 781 (1997).

Under Indiana law, a sheriff's department, such as the St. Joseph County Police Department, is independently established by the state constitution and is led by an independently elected sheriff. Ind. Const. art. VI, § 2. Because the sheriff, who heads the department, is independently elected, the sheriff answers to the county's citizens, not to other elected officials in the county. Markley v. Walters, 790 F. Supp. 190, 191 (N.D. Ind. 1992). A sheriff is responsible for "tak[ing] care of the county jail and the prisoners there," Ind. Code § 36-2-13-

_____

[4] Section 1983 provides relief for constitutional violations, not state tort claims, Baker v. McCollan, 443 U.S. 137, 146 (1979), so it's unclear that the County Police Department would be entitled to summary judgment on Ms. Mahoney's tortious interference with a business relationship claim if it were an improper defendant under § 1983. The court doesn't need to reach this issue, though, so it doesn't.

5(a)(7), and although County Police Department are employees of the county, the sheriff assigns their duties according to law. Id. § 36-8-10-4(a). A county jail is the "domain" of the county sheriff, and because of the sheriff's independence, the sheriff's actions aren't attributed to the county or the county council. Markley v. Walters, 790 F. Supp. at 191–192; see also Hupp v. Hill, 576 N.E.2d 1320, 1326 (Ind. Ct. App. 1991) ("It is well settled that Indiana Sheriffs are not subject to the control or authority of the County Commissioners of the county in which they hold office."). Because the sheriff is independent, is responsible for managing the jail, and assigns county sheriff's deputies' duties, the sheriff's department is a proper defendant in an action for violations by the sheriff's department. Lunsford v. Tipton Cnty. Sheriff's Dep't, No. 1:17-CV-2230, 2017 U.S. Dist. LEXIS 195774, at *2–3 (S.D. Ind. Nov. 29, 2017); Pitts v. Elkhart Cnty., No. 3:05-CV-38, 2007 WL 3256663, at *4–6 (N.D. Ind. Nov. 2, 2007); Argandona v. Lake Cnty. Sheriff's Dep't, No. 2:06-cv-259, 2007 U.S. Dist. LEXIS 10694, at *5–10 (N.D. Ind. Feb. 13, 2007); cf. Martin v. Fort Wayne Police Dep't, No. 1:09-CV-48, 2010 U.S. Dist. LEXIS 124481, at *6–9 (N.D. Ind. Nov. 23, 2010) (city police department is subordinate to the city, so not suable). The St. Joseph County Police Department is independent and responsible for actions at the jail, according to Indiana law, so the County Police Department isn't entitled to summary judgment on these grounds.

The County Police Department argues that the foregoing isn't correct or that even if it is, the County Police Department is the wrong defendant. The County Police Department argue that the proper defendant would be the county

15

sheriff in his official capacity. That is a distinction without a difference since a suit against a government officer is really a suit against the officer's agency or department. Franklin v. Zaruba, 150 F.3d 682, 684 n.2 (7th Cir. 1998) (citing Kentucky v. Graham, 473 U.S. 159, 165 (1985); Monell v. Dep't of Soc. Serv., 436 U.S. 658, 690 n.55 (1978)). A suit against Sheriff Redman in his official capacity would really be a suit against the St. Joseph County Sheriff's Department, which is what Ms. Mahoney has brought.

Next, the County Police Department argues that the St. Joseph County Police Department is "a name of reference only, and is not a legal entity." The County Police Department doesn't reconcile this argument with its interrogatory response conceding its status as a "department" under Indiana Code § 36-8-10-2. [Doc. No. 59, Ex. 2]. That section defines a "department as a "sheriff's department of a county" under Indiana Code § 36-8-10-2.

Finally, the County Police Department cites cases that at first blush suggest the County Police Department isn't suable. Upon closer examination, these cases prove not to be controlling.

The County Police Department cites Sow v. Fortville Police Department, 636 F.3d 293, 300 (7th Cir. 2011) for the rule that police departments can't be sued. As explained in another decision applying Indiana law, Sow's outcome, though correctly applying McMillian v. Monroe County, 520 U.S. 781, turned on the defendant's status as a city police department, not a county sheriff's department. Lunsford v. Tipton Cnty. Sheriff's Dep't, No. 1:17-CV-2330, 2017 U.S. Dist. LEXIS 195774, at *2 (S.D. Ind. Nov. 29, 2017). McMillian instructs

courts to examine the local government entity's status under state law, so since city police and county sheriff's departments are defined differently under Indiana law, one outcome regarding a city department doesn't require the same outcome for a county sheriff's department. The County Police Department also cites Miller v. St. Joseph County, No. 2:11-CV-217, 2014 U.S. Dist. LEXIS 103570, at *24–25 (N.D. Ind. July 30, 2014), for the rule that it can't be sued. The case appears extremely persuasive since the Miller court held that the St. Joseph County Police Department wasn't suable under § 1983. Id. at *24. But the Miller court reached this conclusion by relying on cases that either held that city police departments weren't suable or held that county sheriff's departments were suable but were decided before McMillian. Gillespie v. City of Indianapolis, 13 F. Supp. 2d 811, 816 (S.D. Ind. 1998) (city police department); Slay v. Marion Cnty. Sheriff's Dep't, 603 N.E.2d 877, 887 (Ind. Ct. App. 1992) (decided before McMillian and relying on one case about city police departments and another about Michigan sheriff's departments). The Miller court's reliance on these cases is perfectly understandable given that the plaintiff didn't argue against the St. Joseph County Police Department's argument and so waived the argument. Miller v. St. Joseph Cnty., 2014 U.S. Dist. LEXIS 103570, at *24. With the benefit of adversarial briefing, this court has determined that the County Police Department is a proper defendant under Indiana law, so the County Police Department isn't entitled to summary judgment on these grounds.

Indiana law puts the sheriff in charge of the County Police Department to administer the jail. The sheriff and his department answer to the county's voters,

not to other county or state elected officials, even if the sheriff's deputies are employees of the county. Accordingly, the County Police Department is a proper defendant under § 1983 for purposes of Ms. Mahoney's claims.

### 2. First Amendment retaliation (Count I)

The County Police Department moves for summary judgment on Ms. Mahoney's First Amendment retaliation claim, arguing that Ms. Mahoney's speech wasn't the cause of her removal from the jail and that even if it were, the County Police Department's interest in removing her from the jail outweighed Ms. Mahoney's free speech rights. Ms. Mahoney disputes both points.

To prove a First Amendment retaliation claim, a plaintiff must first show that her speech was constitutionally protected. Graber v. Clarke, 763 F.3d 888, 894–895 (7th Cir. 2014). Whether speech is constitutionally protected is a question of law. Id. at 894. The court starts by asking whether plaintiff spoke as a citizen on a matter of public concern. Id. at 895. If so, the court must decide whether the plaintiff's interest in free speech outweighs the government's interest in controlling that speech. Gustafson v. Jones, 290 F.3d 895, 909 (7th Cir. 2002) (citing Pickering v. Bd. of Educ., 391 U.S. 563, 568 (1968)). A court bases that decision on the following seven factors, considering the undisputed evidence:

> (1) whether the speech would create problems in maintaining discipline or harmony among co-workers;
> (2) whether the employment relationship is one in which personal loyalty and confidence are necessary;
> (3) whether the speech impeded the employee's ability to perform her responsibilities;
> (4) the time, place, and manner of the speech;
> (5) the context within which the underlying dispute arose;

(6) whether the matter was one on which debate was vital to informed decision-making; and
(7) whether the speaker should be regarded as a member of the general public.

Id. In defending its actions, a government actor must provide more than "[m]ere assertions of a generalized potential for disruption." Id. at 911.

Once a plaintiff has proven the first element (that her speech was constitutionally protected), she must show (2) that she suffered an adverse employment action that was sufficiently adverse to deter her exercise of free speech, and (3) that her speech was a substantial or motivating factor for the adverse employment action. Graber v. Clarke, 763 F.3d at 894–895.

The County Police Department first argues that Ms. Mahoney's Facebook post wasn't a substantial or motivating factor for her removal from the jail. The County Police Department cites evidence that Ms. Mahoney had a number of performance issues and had been on a performance improvement plan for a few months before her removal. The County Police Department also cites evidence that Warden Lawson and Troy Warner, counsel for the County Police Department, wanted to meet with Beacon to discuss removing Ms. Mahoney from her position at the jail. All of this, according to the County Police Department, requires a finding that the County Police Department had already decided to remove Ms. Mahoney from the jail and would've removed her even if she hadn't published her Facebook post.

Ms. Mahoney responds by pointing to evidence that her Facebook post was the impetus for her removal from the jail, such as Warden Lawson's affidavit in which Warden Lawson said she decided Ms. Mahoney had to be removed

19

immediately because of the Facebook post. Ms. Mahoney cites evidence that Sheriff Redman hadn't decided that Ms. Mahoney had to be removed for performance issues, as well.

The County Police Department has presented evidence that it might have already decided to fire Ms. Mahoney or that it would have eventually done so absent her Facebook post, but Ms. Mahoney has presented evidence that creates a factual dispute as to causation. The County Police Department isn't entitled to summary judgment on the basis of causation.

The County Police Department then argues that Ms. Mahoney can't meet the first element of a First Amendment retaliation claim—that her speech was constitutionally protected. The County Police Department expressly concedes that Ms. Mahoney spoke on a matter of public concern and appears to concede that Ms. Mahoney was speaking as a citizen when she posted to Facebook. That leaves the balance of interests. The County argues that its interests in removing Ms. Mahoney outweighed her interests in exercising her free speech. By the County Police Department's estimation, five of the seven factors weigh in favor its interests. The County Police Department asserts that because Ms. Mahoney's post was antagonistic toward police, the post would create problems in maintaining discipline and harmony among coworkers, would undermine the personal loyalty and confidence required at the jail, and would impede Ms. Mahoney's ability to do the job since she had frayed her relationship with correctional officers who had to accompany her whenever she administered care to inmates. Warden Lawson testified that Ms. Mahoney's Facebook post would

create those problems, and Ms. Mahoney testified that she could imagine that they would do so. The County Police Department adds that the subject of the post wasn't related to the St. Joseph County Jail or Juvenile Justice Center, so the context of the underlying dispute weighs in favor of the County Police Department, as does the fact that the post didn't relate to a debate that was vital to informed decision-making at work.

Ms. Mahoney responds by arguing that the County Police Department's evidence of disharmony and ineffectiveness is too speculative to prove that the County Police Department's interests outweigh hers. She also disputes that her post did or would cause such problems by pointing to evidence that no guards or staff seemed offended by the post or treated her differently because of the post. She points out that she only conceded in her deposition that her post could have a negative effect at work, not that it did or certainly would. Finally, she argues that the time, place, and manner cut in her favor because she published the Facebook post on a weekend night from home and that it was only visible to "friends" and "friends of friends" on Facebook.

Ms. Mahoney has created a factual dispute of material fact, so the County Police Department isn't entitled to summary judgment on this argument. Whether speech is constitutionally protected is a question of law that the court can decide at summary judgment, but the court can only do so based on undisputed evidence. Gustafson v. Jones, 290 F.3d 895, 909 (7th Cir. 2002). Ms. Mahoney has shown that some of the County Police Department's evidence is somewhat speculative and has presented evidence that her work relationships

21

were unaffected by the post. The court can't hold as a matter of law on this record that Ms. Mahoney's speech wasn't protected when there are factual disputes about the underlying interests of both parties.

The County Police Department moved for summary judgment on the basis of causation between Ms. Mahoney's Facebook post and her removal and on the question of whether her Facebook post amount to constitutionally protected speech in the employment retaliation context. Because Ms. Mahoney has created a genuine issue of material fact on both elements of her First Amendment retaliation claim, the court denies the County Police Department's motion for summary judgment as to Count I.


### 3. Conspiracy to deprive constitutional rights under § 1983 (Count II)

The County Police Department moves for summary judgment on Ms. Mahoney's § 1983 conspiracy claim, arguing that Ms. Mahoney can neither establish an underlying constitutional deprivation nor establish an agreement between the County Police Department and Beacon. Ms. Mahoney argues that her First Amendment retaliation claims shows deprivation of a constitutional right and cites evidence that she says shows an agreement between the County Police Department and Beacon.

As explained earlier in this opinion, a plaintiff alleging a § 1983 conspiracy must show that multiple people reached an agreement to deprive the plaintiff of a constitutional right, an overt act in furtherance of the conspiracy, and that the acts actually deprived the plaintiff of the constitutional right. Beaman v.

Freesmeyer, 776 F.3d 500, 510 (7th Cir. 2015). The plaintiff can rely on circumstantial, though not speculative, evidence to show an agreement. Id. at 511.

The County Police Department argues that Ms. Mahoney can't show that she was deprived of any constitutional right. As discussed earlier, Ms. Mahoney has a viable First Amendment retaliation claim against the County Police Department. Ms. Mahoney's First Amendment retaliation claim could provide an underlying deprivation of constitutional rights, so the County Police Department isn't entitled to summary judgment on that basis.

Next, the County Police Department argues there's no evidence of an agreement with Beacon. Ms. Mahoney presents evidence that Sheriff Redman and Warden Lawson wanted Ms. Mahoney removed from the jail because of the Facebook post and that they believed her post was offensive to law enforcement generally, even though they might not have viewed the post. There's also evidence that Ms. Walker fired Ms. Mahoney without viewing the video embedded in the post and Ms. Mahoney claims Ms. Walker mistakenly believed the post disparaged local police, even though the video was about police officers in Phoenix, Arizona. All of this, according to Ms. Mahoney, is evidence of "single plan" by both defendants "designed to punish [Ms.] Mahoney for exercising her First Amendment rights.

Ms. Mahoney hasn't created a genuine issue of fact as to an agreement between the County Police Department and another party. As was true of her case against Beacon, the evidence she cites suggests that County Police

Department staff and Beacon staff were unhappy with her post and reacted in similar ways, but the evidence doesn't suggest any agreement between the defendants. Ms. Mahoney cites evidence that Ms. Walker, Warden Lawson, and Sheriff Redman may have developed an opinion of Ms. Mahoney's post without viewing it with their own eyes, but that's not probative of an agreement among the three. Because Ms. Mahoney hasn't created a genuine issue of whether there was an agreement between the County Police Department and anyone else, the County Police Department is entitled to summary judgment on Count II.

### 4. *Tortious interference with a business relationship (Count III)*

The County Police Department moves for summary judgment on Ms. Mahoney's tortious interference with a business relationship claim. Ms. Mahoney claims that by removing Ms. Mahoney from the jail, the County Police Department intentionally interfered with her employment relationship with Beacon and caused her to lose her job with Beacon. The County Police Department argues there's no genuine issue as to the interference, justification, and damages elements. Ms. Mahoney contests each of the County Police Department's arguments.

A plaintiff alleging tortious interference with a business relationship must show: (1) the existence of a valid business relationship; (2) the defendant's knowledge of the relationship; (3) the defendant's intentional interference with the relationship; (4) the absence of justification; (5) damages caused by the interference; and (6) that the defendant committed an illegal act to achieve his

end. <u>Pierce v. Zoetis, Inc.</u>, 818 F.3d 274, 278 (7th Cir. 2016). The illegal act needn't be criminal. <u>Reginal Martin Agency, Inc. v. Conseco Med. Ins. Co.</u>, 388 F. Supp. 2d 919, 931–932 (S.D. Ind. 2005).

The County Police Department first argues it's entitled to summary judgment because Ms. Mahoney can't show that it intentionally interfered with her employment relationship with Beacon. The County Police Department argues that because Warden Lawson and Sheriff Redman didn't have the authority to fire Ms. Mahoney and only asked that she be removed from the jail, not fired, there's no genuine issue of material fact. Ms. Mahoney responds by arguing that the timing between her removal from the jail and her termination show that the County Police Department's actions irrevocably damaged her employment relationship and amounts to intentional interference.

The County Police Department focuses solely on its inability to fire Ms. Mahoney and doesn't address why a lesser act than firing her, like removing her from the jail, couldn't amount to interference as a matter of law. Its argument suggests that the only way it could interfere with the business relationship would be to fire Ms. Mahoney, which would seem to reduce the range of actions that could amount to tortious interference to termination by one's own employer. There's a genuine issue as to whether removing Ms. Mahoney from the jail was intentional interference, so summary judgment isn't warranted on these grounds.

The County Police Department next argues it's entitled to summary judgment because it was justified in removing her, based on evidence of her poor

performance and the County Police Department's interest in maintaining harmony and discipline at the jail. Ms. Mahoney responds that the County Jail's actions, even if justified, were tainted by their motivation to retaliate against her for her constitutionally protected speech, and that whether their actions were justified depends whether their conduct was fair and reasonable under the circumstances. Guinn v. Applied Composite Eng'g, Inc., 994 N.E.2d 1256, 1267 (Ind. Ct. App. 2013) (citing the Restatement (Second) of Torts § 767 (1977)). Because there's a genuine issue of fact as to whether the County Police Department was going to remove Ms. Mahoney for reasons other than her Facebook post and because there's a genuine issue of fact with regard to First Amendment retaliation, there is also a genuine issue of fact with respect to justification, and the County Police Department isn't entitled to summary judgment on the justification element.

Finally, the County Police Department argues that its actions didn't cause Ms. Mahoney's damages because Beacon chose to fire her even though Beacon could have reassigned Ms. Mahoney to a different department. Ms. Mahoney has presented evidence that Beacon fired Ms. Mahoney because she was removed from the jail, as discussed earlier, and the County Police Department hasn't shown why Beacon's actions negate the County Police Department's role in causing Ms. Mahoney's damages.

Because Ms. Mahoney has raised a genuine issue as to the intentional interference, justification, and damages elements of her claim, the County Police

Department isn't entitled to summary judgment and its motion is denied as to Count III.

IV. CONCLUSION

Beacon has shown there's no genuine issue of material fact as to whether it engaged in state action and as to whether it reached an agreement with the County Police Department to deprive Ms. Mahoney of any of her rights, so the court GRANTS Beacon's motion for summary judgment. [Doc. No. 48]. Ms. Mahoney has shown that there are genuine issues of material fact as to her First Amendment retaliation claim and tortious interference claim, so the court DENIES the St. Joseph County Police Department's motion for summary judgment as to Counts I and III. [Doc. No. 53] The St. Joseph County Police Department has shown there's no genuine issue of material fact as to an agreement for Ms. Mahoney's conspiracy claim, so the court GRANTS the motion for summary judgment as to Count II. [Doc. No. 53].

SO ORDERED.


ENTERED:  February 14, 2022


<u>/s/ Robert L. Miller, Jr.</u>
Judge, United States District Court